UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY SOUCIE,

          Plaintiff,                 Case No. 2:16-cv-10576
                                         District Judge David Lawson
v.                                     Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.
_____/

**RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DE 17) AND TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 15)**

I.    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment (DE 17), **DENY** Plaintiff's motion for summary judgment (DE 15), and

**AFFIRM** the Commissioner's decision.

II.    **REPORT**

      Plaintiff, Jeffrey Soucie, brings this action under 42 U.S.C. §§ 405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for social security disability insurance

benefits.  This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 15), the

Commissioner's memorandum in opposition and cross motion for summary judgment (DE 17), and the administrative record (DE 13).

## A.    Background

Plaintiff filed his application for disability insurance benefits on August 28, 2013, alleging that he had been disabled since August 23, 2013.  (R. at 58, 111.) Plaintiff's application was denied and he sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  ALJ Jerome Blum held a hearing on March 23, 2015 and subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 9-57.)   On December 23, 2015, the Appeals Council denied Plaintiff's request for review.  (R. at 1-3).  ALJ Blum's decision became the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

## B.    Plaintiff's Medical History

On January 13, 2013, Plaintiff was diagnosed with a ventral hernia at the Henry Ford Macomb Hospital.  (R. at 306.)[1]  On February 11, 2013, Plaintiff was

---

[1] The Commissioner asserts in her motion for summary judgment that Michael Noorily, M.D., performed a ventral umbilical hernia repair surgery on Plaintiff on January 22, 2013.  (DE 17 at 4.)  The portions of the record relied upon by the Commissioner for that conclusion (R. at 187-188) show that Dr. Noorily saw Plaintiff on January 18, 2013, stating that Plaintiff "presents for elective surgical repair" of a hernia and "agrees to proceed with operative intervention at this time." (*Id.*) Those notes were signed by Dr. Noorily on January 18, 2013 (though they bear an "admit date" of January 22, 2013), but they do not reflect that Plaintiff actually had surgery at that time.  In addition, at the hearing before ALJ Blum,

seen by Srihari Ravi, M.D., for a cardiac evaluation.  (R. at 223-225.)  Plaintiff denied experiencing chest pains, dyspnea,[2] dizziness or being lightheaded. (R. at 223.)  Plaintiff was "working on quitting smoking" and was "exercising minimally . . . despite extensive counseling in the past." (*Id.*)  Plaintiff's chest and lung exams were normal, though Dr. Ravi noted the presence of a heart murmur and bilateral pitting edema.  (R. at 224-225.)  Dr. Ravi advised Plaintiff to exercise regularly and lose weight.  (R. at 225.)

Plaintiff was admitted to the hospital from June 24-25, 2013 with "atypical chest pain."  (R. at 192-193.)  Plaintiff was given nitroglycerin and oxygen and a stent was inserted, after which medical records reflect that he had "complete resolution of his chest pain" and was "doing great."  (R. at 193.)

Plaintiff had a follow-up examination by Dr. Ravi on June 28, 2013.  (R. at 226-229.)  Plaintiff reported no dizziness, dyspnea or lightheadedness, though he did have "occasional transient episodes of left sided chest pain."  (R. at 226.)  Dr. Ravi noted that Plaintiff "[c]ontinues to smoke despite extensive counseling

---

Plaintiff testified that he had his hernia "fixed" in 2014.  (R. at 13.)  Plaintiff likewise told a physician performing a consultative exam in November 2013 that he was awaiting cardiac clearance before undergoing hernia surgery.  (R. at 266.)  Consequently, the Commissioner's statement regarding Plaintiff having had hernia surgery in January 2013 seems to be erroneous, but, regardless, any such error has no effect on whether Plaintiff is entitled to relief.

[2] Dyspnea is defined as "difficult or labored respiration[.]"  http://www.merriam-webster.com/dictionary/dyspnea (last visited October 18, 2016)

regarding smoking cessation." (*Id.*)  Once again, Plaintiff's chest and lung exams were normal except for the presence of a heart murmur.  (R. at 227.)  Dr. Ravi also again noted that Plaintiff had bilateral pitting edema.  (R. at 228.)  As he did previously, Dr. Ravi advised Plaintiff to exercise regularly and lose weight.  (*Id.*)

On July 31, 2013, Plaintiff again was seen by Dr. Ravi, at which time Plaintiff said he had had "one episode of chest pain lastin[g] 5 minutes while getting ready to shower."  (R. at 230.)  Plaintiff denied having dyspnea, dizziness or feeling lightheaded.  (*Id.*)  Dr. Ravi noted again that Plaintiff was "exercising minimally" and continued to smoke.  (*Id.*)  As with the previous visits, other than a heart murmur, Plaintiff's chest and lung exams were normal and Plaintiff continued to have bilateral pitting edema.  (R. at 231.)  Plaintiff was again advised to exercise regularly and lose weight.  (R. at 232.)

Plaintiff completed a function report on September 18, 2013.  (R. at 149-156.)  In that report, Plaintiff stated that he took care of his sons, including doing laundry, preparing meals and cleaning.  (R. at 150-151.)  Plaintiff also stated that he mowed his yard weekly, shopped in stores for food and clothes and went outside daily.  (R. at 151-152.)  Although Plaintiff stated he could not walk as much as he once did, he listed his hobbies as walking, watching tv and reading.  (R. at 153.)  Plaintiff reported having problems lifting, standing, reaching, walking,

sitting and climbing stairs.  (R. at 154.)  Plaintiff said he needed to rest for a "couple minutes" after walking half of a block.  (*Id.*)

On November 7, 2013, Florence Thomas, M.D., performed a consultative examination of Plaintiff.  (R. 266-268.)  Plaintiff stated to Dr. Thomas that he was "awaiting cardiac clearance before pursuing correction" of his hernia.  (R. at 266.)  Plaintiff reported suffering from no dizziness but reported that he did have a history of coronary artery disease, including having had multiple stents implanted, as well as "occasional chest pain and shortness of breath[,] typically with exertion."  (*Id.*)  Plaintiff told Dr. Thomas that he used nitroglycerin as needed and had not had any hospitalizations or emergency room visits since the aforementioned June 2013 stent surgery.  (*Id.*)  According to Plaintiff, he smoked about one-half of a pack of cigarettes per day but had no coughing, wheezing, shortness of breath or abdominal pain.  (R. at 267.)  Dr. Thomas observed a "small reducible umbilical hernia" but the respiratory and cardiovascular exams were otherwise normal.  (*Id.*)[3]  Plaintiff also had "[o]ccasional edema in the feet[.]"  (*Id.*)  Dr. Thomas stated that Plaintiff "does have the following limitations[:] With coronary history, he should likely avoid fumes, pulmonary irritants and extreme of temperature.  He should adhere to restrictions, if any, as per cardiology."  (R. at 268.)

_____

[3]Unlike Dr. Ravi, Dr. Thomas did not denote Plaintiff as having a heart murmur.

Shortly thereafter, on November 20, 2013, State agency consultant Michael Parrish, M.D., reviewed the record and opined that Plaintiff's hernia and heart disease constituted severe impairments.  (R. at 63.)  However, Dr. Parrish concluded that Plaintiff nonetheless could: lift twenty pounds occasionally and ten pounds frequently; stand or walk about six hours out of an eight hour workday; sit about six hours out of an eight hour workday; and occasionally climb ramps or stairs, stoop, kneel, crouch or crawl.  (R. at 65.)  Dr. Parrish stated that Plaintiff could never climb ladders, scaffolds or ropes.  (*Id.*)  Ultimately, Dr. Parrish opined that Plaintiff could perform light work.  (R. at 66.)

On March 3, 2014, Plaintiff again was seen by Dr. Ravi for a preoperative visit as Plaintiff was "contemplating hernia surgery."  (R. 275-278.)  Plaintiff reported having suffered two episodes of chest pain since his last visit, for which he took nitroglycerin, but denied having dizziness or lightheadedness.  (R. at 275.)  Dr. Ravi's report states Plaintiff had "[n]o dyspnea" at one point, but in the next sentence it contrarily states Plaintiff has "stable exertional dyspnea."  (*Id.*)  Dr. Ravi again noted that Plaintiff continued to smoke and was exercising minimally.  (*Id.*)  As with Plaintiff's previous visits, Dr. Ravi noted the presence of a heart murmur and bilateral pitting edema but Plaintiff's cardiovascular and chest and lung exams were otherwise normal.  (R. at 277.)  On April 7, 2014, Dr. Ravi added

an addendum stating Plaintiff could "[p]roceed with non[-]cardiac surgery with acceptable cardiac risks."  (R. at 278.)

On April 22, 2014, Dr. Noorily surgically repaired Plaintiff's hernia.  (R. at 296-297.)   After an April 30, 2014 follow up visit, Dr. Noorily noted that Plaintiff was "doing well.  Return to normal activities slowly next week."  (R. at 291.)  In that same positive vein, Dr. Noorily noted in a May 6, 2014 medical source statement that Plaintiff's prognosis was "excellent" and Plaintiff was limited to "light activity" only for two to four weeks. (R. at 279.)[4]  Shortly thereafter, on May 28, 2014 Dr. Noorily saw Plaintiff again and categorized him as "doing well.  No activity restrictions."  (R. at 290.)  That same date Dr. Noorily filled out an "excuse slip" which released Plaintiff to return to work with no listed restrictions.  (R. at 283.)

Plaintiff again saw Dr. Ravi on August 15, 2014.  (R. at 286-287.)[5] Plaintiff denied having chest pains but reported having stable exertional dyspnea and having "episodes of lightheadedness and dizziness with bending forward or

---

[4]As the ALJ correctly noted in his decision, Dr. Noorily's handwritten medical source statement is "very difficult to read."  (R. at 16.)

[5] The clinical summary for Plaintiff's August 15, 2014 and February 13, 2015 visits with Eastside Cardiovascular Medicine, PC are not signed by a particular doctor. However, Dr. Ravi's previous notes bear that medical group's name and the Commissioner asserts Plaintiff saw Dr. Ravi on those two dates.  In light of Plaintiff offering nothing to the contrary, the Court will assume that Plaintiff saw Dr. Ravi on August 15, 2014 and February 13, 2015, but the precise identity of the physician who saw Plaintiff on those dates does not affect the merits of this action.

when he lies down and mostly transient." (R. at 286.) Plaintiff was still smoking. (*Id.*)

Finally, Plaintiff saw Dr. Ravi again on February 13, 2015. (R. at 288-289.) Plaintiff again reported suffering from stable exertional dyspnea and "occasional transient exertional chest pain." (R. at 288.) Plaintiff denied having dizziness or feeling lightheaded, and he was still smoking. (*Id.*)

### C.   Hearing Testimony

#### 1.   Plaintiff's Testimony

At the March 23, 2015 hearing before the ALJ, Plaintiff reported that he was fifty-one years old (R. at 35), five feet eight inches tall and weighed 238 pounds. (R. at 37.) Plaintiff testified that he stopped working due to his hernia and had not worked since the alleged onset date of August 23, 2013. (R. at 27.) However, Plaintiff also testified that he had not had any problems with his hernia since it was "fixed back in 2014." (R. at 37-38.)

Plaintiff previously "worked in shipping and receiving in a heat treat facility." (R. at 29.) Plaintiff stated that he held that position at Woodworth Industries from 1994 to 2004 (R. at 31) and that job required him to lift up to thirty pounds about every other day and to lift eight to ten pounds on a daily basis. (R. at 29-30.) Plaintiff stated he could lift "max maybe 13 pounds about, you know" as of the date of the hearing and that he "on occasion" had pain when lifting eight to

8

ten pounds.  (R. at 30.)[6]  After leaving Woodworth Industries, Plaintiff operated a cement saw for Concrete Cutting and Breaking (R. at 32), after which he operated a steel saw at Global Tooling Systems.  (R. at 33.)[7]

Plaintiff testified that he still got chest pains but had not taken nitroglycerin since February.  (R. at 28-29.)  Plaintiff stated that his cardiologist had told him "everything was looking good" at his most recent visit.  (R. at 31.)  Plaintiff testified that he suffered from COPD (chronic obstructive pulmonary disease) and sleep apnea.  (R. at 35.)  As for his smoking, Plaintiff testified that he was "[a]bout down to a pack a day."  (*Id.*)  When asked by his attorney, Plaintiff stated that exertion, such as cleaning, caused him to get dizzy and sweat.  (R. at 36.)  Plaintiff also stated that he has high blood pressure and on occasion had swelling in his legs.  (R. at 39.)

At the time of the hearing, Plaintiff resided with his three children and a granddaughter.  (R. at 35.)   Despite his dizziness, Plaintiff continued to perform routine household chores, such as cleaning, laundry and meal preparation.  (R. at 40-41.)  Plaintiff estimated that he could stand about half an hour before needing to sit down and could walk about seven to ten minutes before needing to take a break

---

[6] When again asked later in the hearing "[w]hat can you lift today?" Plaintiff replied "I would say maybe 15 pounds max."  (R. at 34.)

[7] Plaintiff did not specify when he worked for those entities.

due to being out of breath and having leg cramps.  (R. at 43.)  Finally, Plaintiff

stated that he can sit for an hour or two before his legs begin cramping.  (*Id.*)

### 2.    **Vocational Expert Testimony**

Judith Findora also testified at the hearing as a Vocational Expert ("VE").

(R. at 61-66.)  She classified Plaintiff's past relevant work as circular saw operator

(skilled and medium), cutoff saw operator (semiskilled and medium) and shipping

and receiving supervisor (light and skilled).  (R. at 44-46.)  The VE testified that

Plaintiff could not go back to any of those prior jobs, assuming the existence of the

limitations mentioned in his testimony regarding walking, sitting, standing and

lifting.  (R. at 47.)

The ALJ and the VE then engaged in a colloquy which concluded with the

VE stating that Plaintiff could work as a cashier.  (R. at 47-49.)  Plaintiff's counsel

then began to ask a rambling, awkwardly phrased question about a sit/stand

option,[8] but the VE interjected "[w]ell, we didn't talk about standing and sitting

specifically, but approximately 400,000 of these [cashier positions] are basically

seated positions.  And if they—the individual wanted to stand whenever they

needed to, it would be no problem."  (R. at 50.)  The VE later testified that

---

[8] Specifically, Plaintiff's counsel began "[s]o specifically given a sit/stand option
there—that would—you have answered that question regarding if the sit/stand
require—sit/stand option will require the positions where they could do more
sitting versus—[.]"  (R. at 50.)

Plaintiff's prior position as a shipping and receiving supervisor would mean he has

clerical skills that would transfer to sedentary positions, such as an order filler

(sometimes called order clerk)—a semi-skilled position with 74,000 jobs

nationally and approximately 1,600 jobs in Michigan.  (R. at 51-53.)

## D.  THE ADMINISTRATIVE DECISION

On May 14, 2015, the ALJ issued his decision.  (R. at 12-18.)  At Step 1 of

the sequential evaluation process,[9] the ALJ found that Plaintiff had not engaged in

substantial gainful activity since his alleged onset date of August 23, 2013.  (R. at

14.)

---

[9] Social Security Regulations require ALJs to resolve a disability claim through a
five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).
Although a dispositive finding at any step terminates the ALJ's review, *see Colvin
v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered the sequential
review considers and answers five questions:

1.   Is the claimant engaged in substantial gainful activity?
2.   Does the claimant suffer from one or more severe impairments?
3.   Do the claimant's severe impairments, alone or in combination, meet
     or equal the criteria of an impairment set forth in the Commissioner's
     Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1?
4.   Considering the claimant's residual functional capacity, can the
     claimant perform his or her past relevant work?
5.   Considering the claimant's age, education, past work experience, and
     residual functional capacity, can the claimant perform other work
     available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th
Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At Step 2, the ALJ found that Plaintiff had the following severe impairments: "hernia, coronary artery disease status/post six stents between 2000 and 2013; chronic obstructive pulmonary disease; high blood pressure and edema in the legs. . . ."  (R. at 14.)  At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 14.)

Prior to undertaking Step 4 of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[10] and determined that Plaintiff had the capacity to perform sedentary work except he would need a sit/stand option as needed and would need to avoid exposure to gases, fumes and odors.  (R. at 14-16.)[11]  The ALJ concluded that Plaintiff could not perform his past relevant work.  (R. at 16-17.)

---

[10] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

[11] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §404.1567(a).

At Step 5, the ALJ concluded that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy.  (R. at 17-18.) Specifically, the ALJ determined that Plaintiff could work as an order clerk/filler clerk.  (R. at 17.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 18.)

### E.  STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.  2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Furthermore, the claimant "has the ultimate burden to establish an entitlement to

benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d

1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th

Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be

conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial

evidence standard, "'a decision of the Commissioner will not be upheld where the

SSA fails to follow its own regulations and where that error prejudices a claimant

on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d

at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.  ANALYSIS

In his motion for summary judgment, Plaintiff asserts that "the ALJ's

residual functional capacity and credibility determination does not comply with

Social Security Rules and Regulations."  (DE 15 at 10) (capitalization

standardized).  Though compressed into one omnibus claim by Plaintiff, the claim

that the RFC assessment was improper is legally distinct from the claim of whether

the ALJ's credibility determination was improper.  Because Plaintiff combined

those arguments, it is difficult to discern which portions of the short argument

section of his motion pertain to the RFC assessment and which portions pertain to

the credibility determination.

The Commissioner opposes Plaintiff's motion, asserting that she is entitled

to a grant of summary judgment because substantial evidence supports the ALJ's

conclusions.  I agree with the Commissioner.

### 1.  Plaintiff's Arguments Are Insufficiently Developed

Plaintiff's motion for summary judgment is fatally conclusory, as is

evidenced by the fact that the "argument" section of his motion is only four pages

long.  For example, Plaintiff complains of the ALJ failing to thoroughly discuss the

evidence and applicable law but Plaintiff himself does not thoroughly discuss what specific, germane evidence the ALJ failed to discuss adequately.[12]

As this Court recently held regarding a similar motion for summary judgment in a Social Security case, Plaintiff's "almost complete lack of argument development renders the majority of his arguments waived. '[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.'" *Spiteri v. Colvin*, 2015 WL 7258749, at *3 (E.D. Mich. Nov. 9, 2015) (Stafford, M.J.) (footnote omitted), *report and recommendation adopted at* 2015 WL 8538036 (E.D. Mich. Dec. 11, 2015) (Michelson, J.) (quoting *McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir. 1997)) (citation and internal quotation marks

---

[12] Though it is not entirely clear from his motion whether Plaintiff intends to make such an argument, any attempted argument that the ALJ failed to meet a duty to fully develop the record is without merit.  Plaintiff was represented by counsel at the hearing before the ALJ (albeit not his current counsel) and has not shown other special circumstances which would place a heightened duty upon the ALJ to additionally develop the record. *See, e.g., Trandafir v. Comm'r of Soc. Sec.*, 58 Fed. App'x 113, 115 (6th Cir. 2003) ("The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Only under special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record.").

omitted).[13]   The administrative record in this case is over 400 pages long, and the

Court will not search that lengthy record for potential arguments or evidence

beneficial to Plaintiff.   *Jones v. Comm'r of Soc. Sec.*, 2013 WL 4748083, at *8

(N.D. Ohio Sept. 4, 2013) ("[I]t is not the Court's function to search the

administrative record for evidence to support [Plaintiff's] 'argument' or find law

supporting [his or] her claims. This Court does not conduct a de novo review in

social security proceedings, and certainly cannot be expected to craft an argument

on [Plaintiff's] behalf.") (quotation marks and citations omitted).

## 2.  The RFC Assessment

A plaintiff's RFC is "the most [he or she] can still do despite the physical

and mental limitations resulting from [his or] her impairments."   *Poe v. Comm'r of

Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§

404.1545(a), 416.945(a).   The determination of Plaintiff's RFC is an issue reserved

to the Commissioner and must be supported by substantial evidence.  20 C.F.R. §§

404.1527(3), 416.927(e).   "'ALJs must not succumb to the temptation to play

doctor and make their own independent medical findings.'"   *Simpson*, 344 F.

App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th

Cir. 1996)).

---

[13] Plaintiff's current attorney was also the attorney for Plaintiff *Spiteri.*

Pursuant to Social Security Ruling 96-8p, which Plaintiff asserts the ALJ

ignored, an RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each
> conclusion, citing specific medical facts (e.g., laboratory findings) and
> nonmedical evidence (e.g., daily activities, observations).    In
> assessing RFC, the adjudicator must discuss the individual's ability to
> perform sustained work activities in an ordinary work setting on a
> regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or
> an equivalent work schedule), and describe the maximum amount of
> each work-related activity the individual can perform based on the
> evidence available in the case record. The adjudicator must also
> explain how any material inconsistencies or ambiguities in the
> evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *6-7 (July 2, 1996). "Although SSR 96–8p

requires a 'function-by-function evaluation' to determine a claimant's RFC, case

law does not require the ALJ to discuss those capacities for which no limitation is

alleged."  *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).

Instead, the ALJ "'need only articulate how the evidence in the record supports the

RFC determination, discuss the claimant's ability to perform sustained work-

related activities, and explain the resolution of any inconsistencies in the record.'"

*Id.* (quoting *Bencivengo v. Comm'r of Soc. Sec.,* No. 00–1995,  251 F.3d 153, slip

op. at 5 (3d Cir. Dec. 19, 2000)).

Here, Plaintiff generically asserts that the ALJ's RFC assessment is not

supported by substantial evidence.  (DE 15 at 11.)  Specifically, Plaintiff

sweepingly--but tersely--asserts that the ALJ "never gives a thorough discussion;

he never rejects the Plaintiff's severe pain but does not discuss it, never discusses Plaintiff's obesity, and never discusses any non-exertional limitations." (*Id.*)

Even if the Court leniently overlooks the previously discussed foundational deficiencies in Plaintiff's motion, Plaintiff's RFC-based argument fails because the ALJ's RFC conclusion is supported by substantial evidence.  The consultative physician, Dr. Thomas, opined that Plaintiff should avoid fumes, pulmonary irritants and temperature extremes.  (R. at 268.)  The ALJ concluded Plaintiff "should avoid exposure to gases, fumes, [and] odors" which is, as the ALJ noted, generally consistent with Dr. Thomas's opinion.  (R. at 15-16.).[14]  The order clerk/filler clerk position the ALJ relied upon at step five also does not involve exposure to weather, including extreme heat or cold, meaning it complies with Dr. Thomas's restrictions on temperature extremes.  *See Dictionary of Occupational Titles* § 249.362-026 (4th ed. 1991).  Therefore, the ALJ's failure to utilize the exact language used by Dr. Thomas is, at most, a harmless error.

### a.  Dr. Parrish's Opinion

To the extent that Plaintiff attempts to argue that the ALJ failed by not explicitly weighing the opinion of Dr. Parrish, the lack of such a discussion is, at most, harmless error.  The Court agrees that the ALJ should have explicitly

---

[14] The ALJ's conclusion that Plaintiff should avoid fumes and pulmonary irritants belies Plaintiff's contrary claim that the ALJ utterly failed to factor in Plaintiff's need to avoid fumes.  (DE 15 at 12.)

discussed Dr. Parrish's opinion.  However, Dr. Parish's opinion that Plaintiff could

perform light work is a less restrictive limitation than the ALJ's conclusion that

Plaintiff could perform only sedentary work.  *See* 20 C.F.R. § 404.1567 (providing

in relevant part that "[s]edentary work involves lifting no more than 10 pounds at a

time and occasionally lifting or carrying articles like docket files, ledgers, and

small tools" whereas "[l]ight work involves lifting no more than 20 pounds at a

time with frequent lifting or carrying of objects weighing up to 10 pounds[,]"

meaning that "[i]f someone can do light work, we determine that he or she can also

do sedentary work, unless there are additional limiting factors such as loss of fine

dexterity or inability to sit for long periods of time.").  Therefore, the ALJ's failure

explicitly to discuss and weigh Dr. Parrish's opinions was, at most, a harmless

error because adopting Dr. Parrish's opinion would not entitle Plaintiff to benefits.

*See, e.g., Moore v. Comm'r of Soc. Sec.*, 2015 WL 4936693, at *8 (E.D. Mich.

Aug. 18, 2015) (holding that "whatever ALJ Blatnik did or did not do with respect

to Dr. Sachdev's opinion is harmless because there is no scenario under which that

opinion could have led to a finding of disability.").  *See also Dykes ex rel. Brymer*

*v. Barnhart*, 112 F. App'x 463, 467-68 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212

F.3d 433, 436 (8th Cir. 2000)) ("'an ALJ is not required to discuss all the evidence

submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."').[15]

Additionally, the ALJ's conclusion that Plaintiff is not disabled is in accordance with Dr. Noorily's medical source statement, which provides that Plaintiff's prognosis is "excellent" and that he is only restricted to light duty for two to four weeks post-surgery. (R. at 279.) Similarly, Dr. Noorily's May 28, 2014 "excuse slip" states that Plaintiff may return to work with no listed restrictions. (R. at 283.)

Next, contrary to Plaintiff's arguments, the ALJ did not simply ignore Plaintiff's subjective complaints. In fact, the ALJ's decision explicitly notes that "[d]espite surgery, the claimant occasionally has chest pain, light-headedness and dizziness with postural changes." (R. at 15.) Instead, the ALJ concluded those subjective complaints were not entirely credible when compared to the consistently normal postoperative medical reports regarding Plaintiff's coronary artery disease. (R. at 16.) The ALJ also permissibly concluded that Plaintiff's repeated failure to comply with the recommendation that he cease smoking "does tend to undermine the severity of the claimant's allegations." (*Id.*) *See Marshall v. Comm'r of Soc.*

---

[15]The order clerk/filler clerk position the ALJ relied upon at Step 5 does not involve postural activities, such as crawling, stooping or kneeling. *See Dictionary of Occupational Titles* § 249.362-026 (4th ed. 1991). The ALJ's failure to discuss the postural limitations Dr. Parish opined Plaintiff should adhere to thus is also, at most, a harmless error.

*Sec.*, 2014 WL 2587612, at *2 (E.D. Mich. June 10, 2014) (holding that "[t]he

Sixth Circuit has routinely recognized that [t]he failure to stop smoking against

medical advice can be properly considered in assessing credibility.") (quotation

marks and citation omitted).  In short, Plaintiff has failed to identify specific,

cognizable errors with the ALJ's treatment of his subjective complaints.[16]

### b.  SSR 96-8p

Plaintiff's also argues, albeit with minimal detail, that the ALJ failed to

comply with Social Security Ruling 96-8p.  The extent of Plaintiff's argument is a

block quotation of a portion of that ruling, followed by a vague and conclusory

assertion that the ALJ "never complied or even attempted to reconcile Social

---

[16] Plaintiff argues in passing that the ALJ failed to discuss the side effects of
Plaintiff's medications.  (DE 15 at 13.) However, Plaintiff has not cited to the
record to show the existence of any specific side effects, how any alleged side
effects impacted him or how any alleged side effects otherwise entitle him to relief.
The Court will not search the record with a fine-toothed comb to develop
arguments for Plaintiff.  *See, e.g., Davis v. Comm'r of Soc. Sec.,* 2016 WL
4445774, at *10 (E.D. Mich. July 29, 2016) (Patti, M.J.) ("Having already
concluded that the treating physician's [Dr. Verma's] opinions were properly
discounted, the Court has no affirmative duty to go through the state agency
reviewer's (or the consultative examiner's) findings with a fine-toothed comb to
verify consistency with the 379-page record, particularly where Plaintiff has failed
to use the adversarial process to point out any inconsistencies."), *report and
recommendation adopted at* 2016 WL 4429641 (E.D. Mich. Aug. 22, 2016)
(Leitman, J.).

Security Ruling 96-8p with his decision."  (DE 15 at 13.)[17]  Plaintiff's argument is

insufficiently developed.  Moreover, it is otherwise without merit.

As previously discussed, the portion of SSR 96-8p quoted in Plaintiff's

motion provides in relevant part that an ALJ's RFC assessment "must include a

narrative discussion describing how the evidence supports each conclusion, citing

specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g.,

daily activities, observations)" and the ALJ also "must discuss the individual's

ability to perform sustained work activities in an ordinary work setting on a regular

and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work

schedule), and describe the maximum amount of each work-related activity the

individual can perform based on the evidence available in the case record."   1996

WL 374184, at *7 (footnote omitted).

Although the ALJ did not explicitly discuss SSR 96-8p at length in his

decision, as discussed *supra* he did satisfy its requirements.  First, the ALJ recited

---

[17] Plaintiff's counsel likes to pepper his briefs with the word "never" when pointing
to the ALJ's alleged deficiencies; however, as pointed out in a previous report, this
dramatic phraseology is often belied by the words of the ALJ's actual opinion.
*See, e.g., Lapprich v. Comm'r of Soc. Sec.*, Case No. 2:15-cv-13290-AC-APP, DE
19 (July 18, 2016 report and recommendation) (Patti, M.J.) ("Plaintiff's counsel is
cautioned that the use of emphatic but inaccurate statements—such as his repeated
use of words and phrases like 'never,' 'makes no attempt,' and 'did not' (DE 16 at
14, 15, & 16)—to describe the ALJ's analysis seriously detracts from the
credibility of his arguments and does not exhibit the candor toward the tribunal
expected by this Court."), *report and recommendation adopted in part at* 2016 WL
4204133 (E.D. Mich. Aug. 10, 2016) (Cohn, J.).

Plaintiff's medical history and then stated why he found Plaintiff's subjective complaints to not be entirely credible.  (R. at 15-16.)  This Court has previously rejected a strikingly similar argument made by Plaintiff's counsel.  *See Houston v. Comm'r of Soc. Sec.*, 2015 WL 5752720, at *25-26 (E.D. Mich. Aug. 25, 2015) (Morris, M.J.) ("Tucked at the end of her credibility argument, Plaintiff includes a brief paragraph block quoting SSR 96–8p and concluding, 'Curiously, the ALJ never complied or even attempted to reconcile Social Security Ruling 96–8p with his decision.' . . . Plaintiff does not explain how the ALJ disregarded this Ruling. Her argument seems to relate to her credibility argument, in which she accuses the ALJ of 'severely mistat[ing] and misquote[ing]' Plaintiff.  She does not, however, provide any examples of these misstatements. She continues, 'The ALJ decision [sic] defies logic. There is never any explanation for the ALJ credibility [sic] decision' and it seemed to contradict his statements at the hearing.  Again, she fails to flag the logical fallacies riddling the decision. . . .  Overall, his decision considered the evidence, including Plaintiff's testimony, and found that the objective measures indicated her impairments were less severe than claimed. I suggest that substantial evidence supports this conclusion and that the ALJ did not violate SSR 96–8p.") (citations omitted), *report and recommendation adopted at* 2015 WL 5729079 (E.D. Mich. Sept. 30, 2015) (O'Meara, J.).

Moreover, though the ALJ's decision does not contain an explicit discussion of the Plaintiff's ability to perform work on a regular and recurring basis, such a finding is generally deemed to be encompassed implicitly by an ALJ's RFC finding. *See, e.g., Trischler v. Comm'r of Soc. Sec.*, 2015 WL 5016600, at *20 (E.D. Mich. Aug. 24, 2015) (Borman, J., adopting the report and recommendation of Morris, M.J.) (holding that "the RFC implicitly encompasses this [ability to perform work on a regular basis] finding" and consequently "[m]ost courts do not require any discussion."). In addition, the ALJ's decision defined the RFC as Plaintiff's "ability to do physical and mental work activities on a sustained basis despite limitations from his impairments." (R. at 13.) The usage of the phrase "'sustained basis' suggests that the ALJ considered Plaintiff's capacity to work for an extended period." *Trischler*, 2015 WL 5016600, at *21. The ALJ also cited SSR 96-8p in his opinion when discussing what must be considered in arriving at an RFC assessment. (*See* R. at 13.) Finally, the ALJ showed that he was cognizant of the requirement that he consider Plaintiff's ability to work on a regular and recurring basis by asking the VE about "the regular breaks everyone gets" in a typical workday (R. at 56) and by concluding in his decision that Plaintiff is "limited to sitting for up to six hours, but standing and walking no more than two hours in an eight hour workday." (R. at 15.) *See Trischler*, 2015 WL 5016600, at *21 (listing the ALJ mentioning a standard workday at the hearing as a

25

factor in concluding the ALJ had considered adequately whether a plaintiff could

work on a regular schedule).[18]   Plaintiff's bare bones argument to the contrary

notwithstanding, no further findings or discussion are required to comply with SSR

96-8p.

### c.  Consistency of the RFC and the VE's Hypothetical

Plaintiff also argues that "the RFC in the ALJ['s] decision is not the same

RFC asked of the vocational expert.  The ALJ in the decision provides for a

sit/stand option 'as needed'.  The ALJ asked the vocational expert regarding a

sit/stand option, never stating to the vocational expert 'as needed.'"  (R. at 13)

(citation omitted).   The same basic argument was rejected in a well-reasoned

opinion of the United States District Court for the Northern District of Ohio as

follows:

> In the case *sub judice,* ALJ Horton's written opinion properly
> identified the frequency at which Drossman would need to alternate
> between sitting and standing—at-will. However, the ALJ failed to
> provide this information to the vocational expert. Instead, the ALJ
> merely stated that Plaintiff needed a sit/stand option. The
> Commissioner suggests that it is reasonable to assume that the VE
> understood the ALJ to be referring to an at-will option. . . .
>
> Although Defendant has failed to cite case law supporting its
> position, the Court agrees with Defendant because several courts have
> found that an ALJ's silence regarding the frequency of the claimant's
> need to alternate between sitting and standing should be interpreted as
> conveying an at-will option. *See Williams v. Barnhart,* 140 F. App'x
> 932, 937 (11th Cir.2005) ("Although the ALJ failed to specify the
> frequency that Williams needed to change his sit/stand position, the

---

[18] Plaintiff's attorney was also counsel for Plaintiff *Trischler.*

reasonable implication of the ALJ's description was that the sit/stand option would be at Williams's own volition."); *Young v. Comm'r of Soc. Sec.,* No. CV08–0474, 2009 WL 2827945, at *11–12 (W.D.La. Sept.1, 2009) ("[S]ince the ALJ failed to specify a frequency, it is assumed that the 'sit/stand option' given by the ALJ was implicitly 'as needed' or 'at will.' "); *see Demyer v. Comm'r of Soc. Sec.,* No. 5:09CV14–J, 2009 WL 3710726, at *4–5 (W.D.Ky. Nov.4, 2009) (Ruling that by definition, the ALJ's indication that the claimant could perform sedentary work of sitting up to six hours and walking up to two hours, did not mean that the claimant had to perform these exercises all at one time). . . .

Thus, based upon her review of the record, the ALJ concluded that Plaintiff could perform a range of sedentary work. As the *Williams* court noted, Plaintiff has not come forward with any evidence explaining why she could not perform the jobs identified by the VE based upon her ability to stand or sit. *Williams,* 140 F. App'x at 937. Additionally, Plaintiff's counsel could have questioned the VE regarding the impact of the sit/stand option during the hearing. *See Young,* 2009 WL 2827945, at *12. Finally, the Court notes that "[n]o principle of administrative law or common sens[e] requires us to remand a case in quest of a perfect opinion unless there is a reason to believe that remand might lead to a different result." *Schmidt–Ress v. Astrue,* No. 4:09–CV–1502, WL 2010 WL 1258015, at *8 (N.D.Ohio Mar.30, 2010) (White, J.) (*citing Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989)). For the foregoing reasons, the Court finds that the ALJ's articulation of Plaintiff's sit-stand option was legally sufficient.

*Drossman v. Astrue*, 2011 WL 4496568, at *5 (N.D. Ohio July 15, 2011), *report and recommendation adopted at* 2011 WL 4496561 (N.D. Ohio Sept. 27, 2011).  This sound reasoning should likewise be applied here: the "as needed" requirement can be reasonably inferred as part and parcel of the question posed to the VE.

### d. Obesity

Finally, citing SSR 02-1p,[19] Plaintiff argues the ALJ's "failure to consider obesity at each step of the sequential evaluation is fatal to the decision."[20]  (DE 15 at 12.)  Plaintiff is correct to the extent he argues both that: a) physicians found him to be obese (*see, e.g.*, R. at 225 (finding of obesity by Dr. Ravi on September 20, 2013), R. at 267 (statement in Dr. Thomas's November 7, 2013 report that Plaintiff "is a well-developed, obese male")); and, b) the ALJ did not list obesity as a severe impairment or otherwise discuss Plaintiff's obesity.  Regardless, Plaintiff has not shown an entitlement to relief.

SSR 02-1p explains that "[t]here is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment."  2002 WL 34686281, at *4.  Therefore, SSR 02-01p "does nothing to relieve [Plaintiff] of the burden of marshaling competent medical opinion and evidence to show *specifically* how [his] obesity exacerbated [his] other impairments, or interacted with them, to render [him] incapable of all suitable work. In the context of judicial review of the ALJ's decision, [Plaintiff] had the burden of showing specifically how the obesity, in combination with other impairments, limited [his] ability to a degree inconsistent

---

[19] See 2002 WL 34686281 (Sept. 12, 2002).

[20] Plaintiff explicitly disavows any argument that the ALJ's failure to find obesity as a severe impairment, standing alone, entitles him to relief.  (DE 15 at 11) ("The Plaintiff concedes that the failure of the ALJ to not find obesity as a severe impairment is not grave in itself to the decision.").

with the ALJ's RFC determination." *Smith v. Astrue*, 639 F.Supp.2d 836, 846-47 (W.D. Mich. 2009).

Plaintiff has completely failed to meet that burden, as he has pointed to no evidence which shows how his obesity, alone or in combination with other impairments, renders him disabled or otherwise leads to a conclusion that the ALJ committed a substantive error.  First, the ALJ was not required to discuss Plaintiff's obesity because he did not find obesity to be one of Plaintiff's severe impairments. *Id.* at 844 ("In this case, by contrast, the ALJ never found obesity to be a severe impairment for [Plaintiff], and [his] objections fail to point to specific medical opinion or other evidence, introduced before the ALJ, suggesting that [his] obesity on top of other impairments rendered [him] disabled—such that the ALJ arguably erred by not discussing the issue explicitly—let alone that such evidence and opinion was so compelling or uncontradicted that the ALJ *had to* then find [him] disabled on that basis.") (footnote omitted).  Second, even if the Court were to somehow conclude that the ALJ erred by failing to discuss Plaintiff's obesity, any such error would be harmless in light of the fact that Plaintiff has pointed to no evidence which shows the detrimental impact of his obesity on his other severe impairments. *Boley v. Comm'r of Soc. Sec.*, 2012 WL 7748910, at *17 (E.D. Mich. Nov. 28, 2012) ("In sum, on this record, and on the argument presented, the Court cannot say that Plaintiff has shown that the ALJ's failure to explicitly discuss

the impact of her obesity on her depression (despite her testimony that her obesity made her self-conscious around others) resulted in harmful error. Accordingly, remand or reversal is not warranted for the ALJ's (presumed) failure to comply with S.S.R. 02–1p.") (citation omitted), *report and recommendation adopted at 2013 WL 1080513 (E.D. Mich. Mar. 15, 2013).*

In short, the ALJ's RFC determination may not have been drafted with ideal thoroughness or precision. Nonetheless, the RFC determination is supported by substantial evidence and Plaintiff has failed to show any errors thereto which entitle him to relief.

### 3. The ALJ's Assessment of Plaintiff's Credibility

Plaintiff asserts in a conclusory fashion that "[t]he ALJ states that he does not find claimant credible; however, the ALJ *never* discusses or evaluates Mr. Soucie's subjective complaints . . . ." (DE 15 at 12) (emphasis added). As discussed previously, the ALJ did discuss Plaintiff's subjective complaints. The Court will construe Plaintiff as also generally arguing that the ALJ erred in assessing Plaintiff's credibility.

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008); *see also Beavers v. Sec'y of Health, Ed., and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)

("The opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly.").  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247.  It is for this reason that the ALJ's credibility findings have at times been characterized as "unchallengeable." *Payne v. Comm'r Soc. Sec.*, 402 F. App'x 109, 113-114 (6th Cir. 2010); *see, Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("A circuit court . . . may not review a determination of credibility. It is for the Secretary and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony.") (alteration omitted).  Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).  "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id*.; *see also Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011) ("Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.").

When assessing an individual's credibility, "the ALJ must [first] determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged." *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011). The ALJ made such a determination here, concluding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." (R. at 16.)

Upon making that finding, the ALJ must next "consider the entire case record" to "evaluate the intensity, persistence, and functional limitations of the symptoms considering objective medical evidence."   20 C.F.R. § 404.1529(c)(1-3). A non-exhaustive list of relevant factors to be considered by the ALJ include: 1) the claimant's daily activities; 2) location, duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of medication; 5) treatment, other than medication; 6) any measures the claimant uses or has used to relieve his or her pain or other symptoms; and 7) other factors concerning functional limitations and restrictions. *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 474 (6th Cir. 2014); 20 C.F.R. § 404.1529(c)(1-3); Soc. Sec. Rul. 96-7p; *see also Ewing v. Astrue*, 2011 WL 3843692, at *9 (N.D. Ohio, Aug 12, 2011) ("Social Security Ruling 96-7p requires such factors to be *considered*, not *discussed* . . . .")  (emphasis in original) (citing

32

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006)), *report and recommendation adopted at* 2011 WL 3843703 (N.D. Ohio Aug. 30, 2011). The ALJ must "provide a sufficiently specific explanation for his [or her] credibility determination so that it is clear to the individual and any subsequent reviewers the weight given to the individual's statements and the reasons for that weight." *Malcolm v. Comm'r of Soc. Sec.*, 2015 WL 1439711, at *7 (E.D. Mich. Mar. 27, 2015) (citing *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1997)).

Here, the ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms he alleged, his statements concerning the intensity, persistence, and limiting effects of the symptoms "are not entirely credible . . . ." (R. at 16.) To support this conclusion, the ALJ pointed to inconsistencies between Plaintiff's testimony regarding his pain and the medical evidence. For example, the ALJ noted that Plaintiff was released to work without restrictions after his hernia surgery and Plaintiff's cardiology examinations "consistently show normal physical findings." (*Id.*) Similarly, the ALJ mentioned the "relative[ly] infrequent, routine and conservative nature" of Plaintiff's medical treatment. (*Id.*) The ALJ also noted that Plaintiff's repeated failure to comply with the recommendation that he cease smoking "does tend to undermine the severity of the claimant's allegations." (*Id.*) *See also Marshall*, 2014 WL 2587612, at *2 (holding that "[t]he Sixth Circuit has routinely

recognized that [t]he failure to stop smoking against medical advice can be properly considered in assessing credibility.") (quotation marks and citation omitted).  The ALJ reached that conclusion despite being cognizant of Plaintiff's occasional chest pain, light-headedness and dizziness associated with postural changes.  (R. at 15.)   Importantly, Plaintiff has not pointed to specific medical evidence which the ALJ overlooked or misconstrued.  In short, the ALJ has provided a sufficiently specific explanation for his credibility determination which is supported by substantial evidence, and the basis upon which the ALJ discounted Plaintiff's credibility is more than apparent to this subsequent reviewer.

### G.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 15), **GRANT** Defendant's motion for summary judgment (DE 17), and **AFFIRM** the Commissioner of Social Security's decision.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: October 24, 2016             s/Anthony P. Patti
                                    Anthony P. Patti
                                    UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on October 24, 2016, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti